**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

BOARD OF PUBLIC WORKS,
CITY OF BLUE EARTH,
MINNESOTA,

        Plaintiff,


v.                              **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 08-5885 (MJD/AJB)


WISCONSIN POWER AND LIGHT
CO., and ALLIANT ENERGY
CORPORATION,

        Defendants.

_____

Michael M. Gavin, Gavin Olson & Winters, Ltd., and Robert A. Jablon and
Sharon Coleman, Spiegel & McDiarmid, LLP, Counsel for Plaintiff.

Brad Fagg, C. Erik Hawes, Mark J. Sherer, and Michael C. Griffen, Morgan, Lewis
& Bockius, LLP, and Matthew P. Kostolnik, Moss & Barnett, PA, Counsel for
Defendants.

_____

## I.    INTRODUCTION

      This matter is before the Court on Defendants' Motion to Dismiss for Lack

of Subject Matter Jurisdiction and Failure to State a Claim upon which Relief Can

Be Granted.  [Docket No. 20]  The Court heard oral argument on April 2, 2009.

## II.     BACKGROUND

### A.     Factual Background

According to the Complaint:

Plaintiff Board of Public Works, City of Blue Earth, Minnesota, ("Blue Earth") operates a municipally-owned electric utility.  (Compl. ¶ 3.)  It purchases nearly all of the electricity that it resells and delivers to its customers from generating utilities, such as Defendant Wisconsin Power and Light Co. ("WPL"). (Id.)

WPL is a wholly owned subsidiary of Defendant Alliant Energy Corporation ("Alliant").  (Compl. ¶ 4.)  WPL is a public utility under the Federal Power Act, 16 U.S.C. §§ 824-824m, ("FPA").

Alliant is a public utility holding company and investor-owned utility holding company and investor-owned utility in the business of selling electricity at wholesale and retail.  (Compl. ¶ 4.)  Alliant has participated in transactions underlying and relating to Blue Earth's lawsuit.  (Id. ¶ 5.)

On April 29, 1994, WPL filed the Bulk Power Sales Tariff (BP-1) (the "BP-1 Tariff") with the Federal Energy Regulatory Commission ("FERC") in FERC

2

Docket No. ER94-1204-000.  (Kostolnik Decl., Exs. A-B; Supplemental Kostolnik Decl., Ex. I.))  "[S]ales under the Tariff will be made at negotiated prices no lower than system incremental energy costs and no higher than the Company's fully allocated cost of capacity plus 110% of incremental energy costs."  (Kostolnik Decl., Ex. B.)  FERC accepted the BP-1 Tariff for filing on July 25, 1994.  (Kostolnik Decl., Ex. C.)

The BP-1 Tariff provided for a two-page service agreement that permitted WPL to enter into contracts with customers, such as Blue Earth, at rates and terms consistent with the Tariff.  (Compl., Ex. 4.)  "Th[e] Tariff establishe[d] a framework under which WP&L [could] sell and a Customer [could] purchase capacity and/or energy from time to time for their mutual benefit."  (BP-1 Tariff, § 3.1, Supplemental Kostolnik Decl., Ex. I.)  Service Schedule A permitted WPL to provide negotiated capacity sales at or below ceiling prices in the tariff and energy prices at out-of-pocket costs plus an adder of up to 10% of out-of-pocket costs.  (BP-1 Tariff, Service Schedule A §§ 4.11-4.12.)  Plaintiff claims Defendants have entered into such a contract with Blue Earth.

In June 1995, WPL and Blue Earth entered a Letter Agreement, under which WPL agreed to sell between 2.9 megawatts ("MW") and 5.0 MW of firm

3

capacity and associated energy at 100% load factor to Blue Earth for a ten-year period, beginning April 21, 1998.  (Compl., Ex. 1 at 1.)

The Letter Agreement set forth the pricing in Appendix A.  (Id.)  Under the agreement, capacity was set at a particular base price and would escalate at a certain percentage per year, while energy was also set at on-peak and off-peak base prices that changed based on a particular formula each year.  (Id. at A-1.) The Appendix provided a chart with estimated capacity and energy prices through the ten-year period, ending with 2008 estimated prices for capacity, on-peak energy, and off-peak energy.  (Id.)

Appendix A also contained three options that could alter the Letter Agreement.  Blue Earth selected Option 1 and Option 3.

Option 1 set a "collar" – both a lower limit and an upper limit on the annual adjustment in the price that WPL would charge Blue Earth for wholesale energy during the initial ten-year contract term.  (Compl., Ex. 1 at A-2.) Specifically, Option 1 stated: "If [Blue Earth] desires a collar on the energy pricing adjustment mechanism WP&L offers to limit the annual pricing adjustment to 4.0% (cap) while setting the lower limit at 2.25% (floor)."  (Id.)

Option 3 provided:

4

> WP&L shall provide a ten year extension option utilizing the 1995
> base energy pricing and the above identified Price Adjustment
> Mechanism without the floor (2.25%) and cap (4.0%).

(Id.)

WPL provided a chart illustrating how the Option 3 extension would

work.  (Compl., Ex. 1 at A-3.)  The estimates for the ten-year extension period

used the estimated 2008 prices set out in the initial contract chart at A-1 as the

beginning base prices for the extension term.  (Compl., Ex. 1 at 5, Appendix A at

A-1.)  The chart used these 2008 estimated ending numbers as a base and

calculated estimated prices for the extension term starting with those figures,

with annual escalations through 2018.  (Compl., Ex. 1 at 7, Appendix A at A-3.)

Before the Letter Agreement was effective, Blue Earth was required to

"sign a WP&L Bulk Power Tariff (BP-1) Service Agreement."  (Compl., Ex. 1 at 3.)

On June 7, 1995, Blue Earth and WPL entered into a service agreement under the

BP-1 Tariff.  (Kostolnik Decl., Ex. D.)  The service agreement was filed with FERC

on June 20, 1995, in Docket No. ER95-1238-000.  (Kostolnik Decl., Exs. E-G.)

FERC accepted the service agreement in an order dated July 25, 1995.  (Kostolnik

Decl., Ex. H.)

At the April 21, 2008, beginning of the renewal term, Defendants

retroactively recalculated the prices of all of the purchases made by Blue Earth during the initial term of the contract as if the collar had not applied, increasing the base price applicable to the renewal term.  (Compl. ¶ 17.)

Blue Earth claims WPL and Alliant breached the Letter Agreement by retroactively recalculating the prices from the initial term and incorporating a spring-back provision that did not exist in the contract, thereby increasing the base energy price for the extension term.

### B.     Procedural Background

On October 31, 2008, Blue Earth filed a Complaint against WPL and Alliant in this Court alleging that WPL is overcharging during the ten-year extension period.  It requests judgment against Defendants in the overcharge amount, plus interest.  It also seeks a declaratory judgment stating that WPL and Alliant violated the contract by retroactively repricing the prices charged during the initial period to obtain an artificially high base price for the extension period and preventing Defendants from continuing this billing practice.  (Compl. ¶ 26.)

Blue Earth claims that the rates that WPL can charge Blue Earth during the ten-year extension period must be based on the rates actually charged during the initial ten-year period, which were limited by the Option 1 collar.

Defendants now seek a dismissal for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

## III.   DISCUSSION

### A.   Standards

#### 1.   Lack of Subject Matter Jurisdiction

Defendants assert that this case should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  "A plaintiff has the burden of establishing subject matter jurisdiction . . . ."  Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006) (citation omitted).

> In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments.  In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.

Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted).  In this case, Defendants assert a facial challenge.

#### 2.   Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a

claim upon which relief may be granted.

> [T]he district court's grant of a motion to dismiss [is reviewed] *de novo*.  Dismissal is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted.  At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief.  The plaintiffs need not provide specific facts in support of their allegations, but they must include sufficient factual information to provide the "grounds" on which the claim rests, and to raise a right to relief above a speculative level.

Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citations omitted).  "A motion to dismiss should be granted if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."

Students for Sensible Drug Policy Found. v. Spellings, 523 F.3d 896, 899 (8th Cir. 2008) (citation omitted).

When deciding a motion to dismiss the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint."  PureChoice, Inc. v. Macke, No. 07-1290 (DWF/SRN), 2007 WL 2023568, at *5 (D. Minn. July 10, 2007) (unpublished) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).  In this case, the Court takes into account the exhibits attached to the Complaint and

the BP-1 tariff and other publicly filed FERC documents that have been

submitted as exhibits by Defendants.

B.      **Statutory Framework**

The FPA grants FERC the exclusive authority to regulate rates, terms, and

conditions governing interstate transmission of energy and sale of wholesale

energy in interstate commerce.  Mississippi Power & Light Co. v. Mississippi ex

rel. Moore, 487 U.S. 354, 371 (1988); New England Power Co. v. New Hampshire,

455 U.S. 331, 340 (1982).  FERC has the "exclusive authority to determine the

reasonableness of wholesale rates."  Mississippi Power & Light Co., 487 U.S. at

371.

FERC has jurisdiction over any "public utility," such as WPL.  16 U.S.C.

§ 824(e); Duke Energy Trading & Mktg., L.L.C. v. Davis, 267 F.3d 1042, 1056 (9th

Cir. 2001).  As a public utility, WPL must file with FERC "schedules showing all

rates and charges for any transmission or sale subject to the jurisdiction of the

Commission, and the classifications, practices, and regulations affecting such

rates and charges, together with all contracts which in any manner affect or relate

to such rates, charges, classifications, and services."  16 U.S.C. § 824d(c).

"[T]he regulatory system created by the [FPA] is premised on contractual

9

agreements voluntarily devised by the regulated companies; it contemplates abrogation of these agreements only in circumstances of unequivocal public necessity." <u>Morgan Stanley Capital Group Inc. v. Pub. Util. Dist. No. 1 of Snohomish County, Washington</u>, 128 S. Ct. 2733, 2739 (2008) (citation omitted). "[T]he FPA . . . permits utilities to set rates with individual electricity purchasers through bilateral contracts.  § 824d(c), (d).  . . . [T]he FPA departed from the scheme of purely tariff-based regulation and acknowledged that contracts between commercial buyers and sellers could be used in ratesetting."  <u>Id.</u> at 2738 (citation omitted).

Defendants claim that the Complaint is barred by field preemption, conflict preemption, and the filed rate doctrine.  In the alternative, Defendants assert that this Court and FERC share concurrent jurisdiction over the Complaint, but this Court should yield primary jurisdiction to FERC.

## C.    Federal Preemption

The doctrine of preemption arises from the Supremacy Clause of the Constitution, which requires that state law must give way when it conflicts with or frustrates federal law.  State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law.  Federal regulations also may

preempt state law, if the agency intends its regulations to have
preemptive effect, and the agency is acting within the scope of its
delegated authority.

Chapman v. Lab One, 390 F.3d 620, 624-25 (8th Cir. 2004) (citations omitted).

### 1.      Field Preemption

#### a.      Standard for Field Preemption

Congress' intent to supercede state law altogether may be found
from a scheme of federal regulation so pervasive as to make
reasonable the inference that Congress left no room to supplement it,
because the Act of Congress may touch a field in which the federal
interest is so dominant that the federal system will be assumed to
preclude enforcement of state laws on the same subject, or because
the object sought to be obtained by the federal law and the character
of obligations imposed by it may reveal the same purpose.

Pac. Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461

U.S. 190, 203-04 (1983) (citation omitted).  "Congressional intent is the ultimate

touchstone guiding preemption analysis."  Gaming Corp. of Am. v. Dorsey &

Whitney, 88 F.3d 536, 544 (8th Cir. 1996) (citation omitted).

#### b.      Analysis

Defendants conclude that, with the FPA, Congress meant to occupy the

field regarding regulation of rates charged for wholesale energy and to vest

exclusive jurisdiction over these matters with FERC.  They note that "[t]he

reasonableness of rates and agreements regulated by FERC may not be

collaterally attacked in state or federal courts.  The only appropriate forum for

such a challenge is before the Commission or a court reviewing the

Commission's order."  <u>Mississippi Power & Light Co.</u>, 487 U.S. at 375.

Defendants cite to a number of cases in which they claim courts have held

that field preemption bars state law claims when plaintiffs cast their claims as

falling outside the purview of FERC.  However, in those cases, the plaintiffs were

seeking to have the federal court decide that the rates or terms established under

the contract with the public utility were unfair or should otherwise not be

enforced, a question that is clearly preempted.  Here, Plaintiff asks the Court to

interpret the contract with WPL to decide what rates are required by the contract

itself.  <u>Cf., e.g.</u>, <u>Public Utility Dist. No. 1 of Grays Harbor County Wash. v.</u>

<u>IDACORP Inc.</u>, 379 F.3d 641, 648 (9th Cir. 2004) ("In its current form, [the

plaintiff's] complaint seems to require the district court, at some point, to

determine the fair price of the electricity that was delivered under the contract.

This determination is clearly within FERC's jurisdiction for determining the

reasonableness of wholesale rates.") (citations omitted).

The Court holds that field preemption does not apply in this case because

Blue Earth is not attempting to modify or avoid a FERC-approved contract.  It

merely seeks interpretation of its contract as it already exists.  FERC has exclusive

authority to set rates under the FPA, but ordinary contract interpretation is not

included in the FPA preemption "field" of activity.  Therefore, FERC's exclusive

jurisdiction to set reasonable rates is not implicated.  Rather, Blue Earth seeks a

determination from this Court of what the contract actually requires.  <u>See, e.g.,</u>

<u>Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.</u>, No.

06-CV-0053-LRR, 2007 WL 1058561, at *23 (N.D. Iowa Mar. 30, 2007) (holding that

in no "provision of the FPA does Congress manifest an intent to completely

preempt state law in the field of electrical power regulation") (citations omitted).

This Complaint does not go to FERC's rate-setting authority.

### 2.    Conflict Preemption

#### a.    Standard for Conflict Preemption

Even where Congress has not entirely displaced state regulation in a
specific area, state law is preempted to the extent that it actually
conflicts with federal law.  Such a conflict arises when compliance
with both federal and state regulations is a physical impossibility, or
where state law stands as an obstacle to the accomplishment and
execution of the full purposes and objectives of Congress.

<u>Pacific Gas & Elec. Co.</u>, 461 U.S. at 204 (citations omitted).

### b.    Analysis

Defendants argue that conflict preemption applies here.  They claim that,

in order to grant Blue Earth relief, this Court would have to determine the

reasonableness of the rates for wholesale energy that have been filed with and

approved by the FERC.  They reason that the methodology for determining the

rate necessarily affects the wholesale rate memorialized in the Letter Agreement.

Defendants conclude that this Court's declaration of the proper method for

determining the rate would be a declaration of the reasonable rate itself, in

conflict with the reasonable rate exclusively established by FERC.

Plaintiff responds that, because it does not seek to modify the contract or

any FERC tariffs, there is no conflict in this case.  Plaintiff only asks the Court to

interpret an existing contract.  Blue Earth claims that a ruling in its favor will not

interfere with any FERC tariff or contract.  See, e.g., Narragansett Elec. Co. v.

Constellation Energy Commodities Group, Inc., 526 F. Supp. 2d 260, 269 (D.R.I.

2007) ("It is well established that district courts and FERC share concurrent

jurisdiction over cases interpreting contracts and settlement agreements.")

(footnote and citations omitted).

The Court rejects Defendants' argument that conflict preemption deprives

this Court of jurisdiction over Plaintiff's Complaint.  Defendants have offered no

explanation of how the Court's decision interpreting the Letter Agreement could

conflict with FERC's rates or with its role of regulating energy rates.  The Court

will simply interpret a FERC-approved contract.  <u>See</u> <u>Portland Gen. Elec. Co. v.</u>

<u>City of Glendale</u>, Civil No. 05-1321-PK, 2007 WL 1655545, at *5 (D. Or. June 1,

2007) ("Because this court's declaration will neither modify the terms of the

Agreement nor evaluate its formulary rates against any standard of fairness,

reason, or justice, the interpretation of the contract will not, in itself, constitute an

usurpation of any FERC function.").

   As the Eighth Circuit recently explained: "[W]e do not agree that the mere

fact that the [] Agreement is [part of a FERC-filed tariff] converts every legal

dispute implicating the [] Agreement into one over which the FERC exercises

exclusive jurisdiction." <u>Cent. Iowa Power Coop. v. Midwest Indep. Transmission</u>

<u>Sys. Operator, Inc.</u>, 561 F.3d 904, 913 (8th Cir. 2009) (citing <u>In re Mirant Corp.</u>, 378

F.3d 511, 519 (5th Cir. 2004)).  The appellate court explained, "If [the plaintiff]

must prove a violation of the [] Agreement to recover under its state law claims,

and if proving that violation challenges FERC-filed rates, then those claims

would raise a federal issue." <u>Id.</u>  In this case, Blue Earth asserts no challenge to a

FERC-filed rate.

The <u>Central Iowa Power</u> court further explained:

> Moreover, insofar as the state court may have occasion to consider the [] Agreement in adjudicating [the plaintiff's] state law claims, we do not think that the state court's consideration of the two-party Agreement disturbs the congressionally approved balance of federal and state judicial responsibilities; we are confident in the adjudicating state court's ability to analyze the plain language of the private contract – a bread-and-butter state court issue.

<u>Id.</u> at 914 (citations omitted).  Similarly, here, this Court's interpretation and enforcement of the Letter Agreement between the parties will not disturb the purposes and objectives of Congress under the FPA.

## D.     Filed Rate Doctrine

### 1.      Standard for Filed Rate Doctrine

The filed rate doctrine forbids a regulated entity [from charging] rates for its services other than those properly filed with the appropriate federal regulatory authority.  The filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.

The purpose of the filed rate doctrine is to: (1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) insure that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require.  . . .

H.J. Inc. v. Nw. Bell Tel. Co., 954 F.2d 485, 488 (8th Cir. 1992) (citations omitted).

The filed rate doctrine applies not only to the actual rates, but also to the terms

and conditions by which federal tariffs are provided.  Nantahala Power & Light

Co. v. Thornburg, 476 U.S. 953, 966-67 (1986).

**2.     Analysis**

Defendants argue that where there is a conflict between a contract rate and

a filed rate, the filed rate controls.  Defendants assert that Blue Earth is requesting

that the Court determine the reasonable rates to be charged by WPL, which could

potentially contradict the rates set by FERC and to interpret and apply FERC

policies in a highly regulated and technical area.

Here, Blue Earth does not seek to change WPL's tariff or the contract rates

or terms.  It only seeks to enforce the contract as it exists.

In this case, the filed rate doctrine has no impact on this Court's

jurisdiction to interpret contracts: "The filed rate doctrine . . . does not oust this

Court of jurisdiction to interpret contracts and construe statutes to the extent that

such action is not rate setting."  United States ex rel. W. Area Power Admin. v.

Pac. Gas & Elec. Co., 714 F. Supp. 1039, 1054 (N.D. Cal. 1989) (citing Arkansas

Louisiana Gas Co. v. Hall, 453 U.S. 571, 579 (1981)).  Defendants have not shown

17

that any decision by this Court has the potential to alter rates or terms set or

approved by FERC.  Plaintiff represents that it merely seeks interpretation of and

enforcement of the Letter Agreement, which complies with FERC rates.  At this

stage in the litigation, there is no evidence that the Court will be required to

determine the reasonableness of FERC rates; or that any decision will be a

collateral attack on those rates.

### E.    The Primary Jurisdiction Doctrine

#### 1.    Standard for Primary Jurisdiction

> The doctrine of primary jurisdiction applies where a claim is
> originally cognizable in the courts, and comes into play whenever
> enforcement of the claim requires the resolution of issues which,
> under a regulatory scheme, have been placed within the special
> competence of an administrative body.  The contours of primary
> jurisdiction are not fixed by a precise formula.  Rather, the
> applicability of the doctrine in any given case depends on whether
> the reasons for the existence of the doctrine are present and whether
> the purposes it serves will be aided by its application.  Among the
> reasons and purposes served are the promotion of consistency and
> uniformity within the areas of regulation and the use of agency
> expertise in cases raising issues of fact not within the conventional
> experience of judges or cases requiring the exercise of administrative
> discretion.

Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005) (citations

omitted).

Whether a case involving energy contracts falls under FERC's primary jurisdiction depends on three factors:

> (1) whether [FERC] possesses some special expertise which makes the case peculiarly appropriate for [FERC] decision; (2) whether there is a need for uniformity of interpretation of the type of question raised by the dispute; and, (3) whether the case is important in relation to the regulatory responsibilities of [FERC].

Arkansas Louisiana Gas Co. v. Hall, 7 FERC ¶ 61,175, ¶61,322 (1979) ("Arkla").

### 2. Arkla Factors

#### a. FERC's Special Expertise

Defendants argue that, here, FERC has special expertise regarding pricing adjustment mechanisms in the sale of energy.  In Arkla, FERC noted that it "is, in general, no more expert than a court in deciding non-technical contact questions. However, interpretation of some types of contractual clauses may involve examination of technical issues which are within this Commission's special expertise."  Arkla, 7 FERC at ¶ 61,322.  The Court concludes that, here, Plaintiff has asserted a standard contract dispute.  Defendants have not demonstrated any particular technical issues that would fall within FERC's special expertise.

#### b. Need for Uniformity

The parties have pointed to no other contract that raises the same contract

19

issues raised here.  There is no evidence that the question of whether the elimination of a collar during a particular contract's renewal term allows a recalculation of the rates during the contract's initial term demands uniformity, particularly when FERC regulations permit the parties to freely contract for renewal or not and for recalculation or not.  The Court is not convinced that there are any unique aspects to this contract – as opposed to any other energy sales contracts -- that create a particular need for uniform interpretation.

### c.    Relation to FERC's Regulatory Responsibilities

Defendants assert that, because FERC accepted the Letter Agreement as just and reasonable, it has an interest in a dispute concerning payment of those FERC-approved rates.

The Court concludes that a decision in favor of either party would not interfere with FERC tariffs or policy.  The parties negotiated pricing terms under WPL's tariff, and Blue Earth does not ask the Court to change any term of the tariff or of Blue Earth's contract.  This case merely addresses the interpretation of one particular contract, which does not implicate general FERC policy. Defendants point to no specific FERC tariff term or FERC policy that would be violated if Blue Earth succeeds in this action.

### 3.    Conclusion

The Court holds that FERC does not have primary jurisdiction in this case.

Because this case presents a question of straightforward interpretation of a

contract, FERC does not have any special expertise that is applicable.  This Court

regularly hears contract interpretation cases.  Because Defendants have not

pointed to any other FERC-approved contract with similar terms, there is no

showing that the contract terms at issue before this Court need to be uniformly

interpreted.  Finally, this case does not implicate  FERC's regulatory

responsibilities.  Although FERC possesses exclusive jurisdiction to set rates, this

Court will not determine what rate would be reasonable; nor will it alter any rate

set forth in FERC tariffs or in the Letter Agreement.  <u>See</u> <u>Cal. Dept. of Water</u>

<u>Resources</u>, 121 FERC ¶ 61,191, at ¶ 45 (2007) ("The facts in dispute are unique to

the parties.  The resolution of this dispute is not important to the regulatory

responsibilities of this Commission.  The Commission has no special expertise in

interpreting the Agreement or in divining how [the parties] intended to address

dec'd generation.  The ascertainment of parties' intent when they execute a

contract is a matter of case-by-case adjudication that does not involve the

considerations of uniformity or technical expertise that, in other circumstances,

might call for the assertion of this Commission's jurisdiction. . . . The type of question that arises here is unique to these parties and there is no need for industry-wide interpretation of the questions that the dispute raises.").

### F.    Failure to State a Claim Against Alliant Energy

Defendants argue that the Court should dismiss the claims against Alliant because Blue Earth has not alleged sufficient facts that would make Alliant a proper defendant.  They note that, although this action is based on a purported breach of contract, Plaintiff has failed to allege that Alliant is a party to the contract upon which it bases its claims and the record demonstrates that Alliant was not a party to any of the relevant agreements.  Defendants conclude that, therefore, Plaintiff cannot show a breach of contact by Alliant or damages caused by Alliant.  See Breen v. Norwest Bank Minn., N.A., 865 F. Supp. 574, 580 (D. Minn. 1994) (dismissing breach of contract count against defendant when those defendants were not parties to the contract).

Defendants assert that, here, the Complaint merely vaguely alleges that Alliant "participated in transactions underlying and relating to this lawsuit." (Compl. ¶ 5.)  They further note that the "general presumption is that a subsidiary corporation is legally separate from its parent corporation."  United

22

States v. Advance Mach. Co., 547 F. Supp. 1085, 1093 (D. Minn. 1982) (citation

omitted).  Defendants argue that Plaintiff has not alleged any of "the substantial

reasons necessary to disregard the presumption that a subsidiary is a legally

separate entity from its parent."  H.J., Inc. v. Int'l Tel. & Tel. Corp., 867 F.2d 1531,

1549 (8th Cir. 1989) (citations omitted).  Defendants argue that, because the Letter

Agreement was not signed by Alliant, Blue Earth needs to plead facts to pierce

the corporate veil.

Plaintiff responds that, under Federal Rule of Civil Procedure 8, it need

only offer "a short and plain statement of the claim showing that the pleader is

entitled to relief.  Specific facts are not necessary; the statement need only give

the defendant fair notice of what the . . . claim is and the grounds upon which it

rests."  Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citation

omitted).

Blue Earth argues that, in its Complaint, it specifically states that Alliant

"has participated in transactions underlying and relating to this law suit."

(Compl. ¶ 5.)  It also alleges:

> Rather than billing Blue Earth on the basis of the Contract terms, at
> the start of the extension period, WP&L and Alliant Energy
> submitted to Blue Earth an invoice that retroactively repriced all of

23

> the purchases made by Blue Earth during the initial term of the
> Contract.  WP&L and Alliant Energy repriced energy for the initial
> term and applied the repricing to extension term bills in spite of the
> fact that the Contract does not provide that future billings for the
> extension term will be based on a repricing of power sales during the
> initial term.

(Compl. ¶ 17.)  Blue Earth also recounts its communications with Alliant and

attempts to resolve the contract dispute.  (Id. ¶¶ 21, 24-25.)

The Court agrees that, as it currently stands, Blue Earth's Complaint fails to

state a breach of contract claim against Alliant.  Plaintiff has not clearly pled that

it is attempting to pierce the corporate veil or that there is some other reason that

Alliant is liable for breach of a contract to which it does not appear to be a party.

However, in its arguments to the Court, Blue Earth asserts that Alliant signed

amendments to the contract, that it was heavily involved in enforcement of the

contract, that it held itself out as a party to the contract, and that it billed Blue

Earth under the contract.  Blue Earth may be able to articulate a valid claim

against Alliant based on its assumption of the contract, piercing the corporate

veil, or some other legal theory.  Having read the Complaint and Blue Earth's

brief and having heard the arguments of counsel, the Court concludes that Blue

Earth may be able to amend its Complaint to state a legally sufficient claim

against Alliant.  Blue Earth is permitted thirty days to do so.

## IV.    CONCLUSION

The Court denies Defendant's motion to dismiss based on lack of subject

matter jurisdiction because Plaintiff merely seeks interpretation of a FERC-

approved contract:

> [T]he FPA does not provide FERC with exclusive jurisdiction over
> the breach of a FERC approved contract.  While the FPA does
> preempt breach of contract claims that challenge a filed rate, district
> courts are permitted to grant relief in situations where the breach of
> contract claim is based upon another rationale.

In re Mirant Corp., 378 F.3d 511, 519 (5th Cir. 2004) (citations omitted).

The filed rate doctrine is not implicated because Blue Earth does not seek

to enforce any rate other than the rate in the FERC-approved contract and there is

no conflict with any FERC rate shown by Defendants.  Ordinary contract

interpretation, particularly when there is no evidence before the Court that the

contract terms at issue arise in other FERC-approved contracts, is within this

Court's expertise, so primary jurisdiction analysis does not lead to dismissal.

Finally, the Court grants Blue Earth leave to amend its Complaint to clearly

state a claim against Alliant.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim upon which Relief Can Be Granted [Docket No. 20] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Plaintiff's claims against Defendant Wisconsin Power and Light Co. **REMAIN**.

2.  Plaintiff's claims against Defendant Alliant Energy Corporation are **DISMISSED** and Plaintiff shall file an Amended Complaint within thirty days from the date of this Order to clearly state its claims against Defendant Alliant Energy Corporation.

Dated:  May 6, 2009

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court

26